UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>ROY ALLEN GREEN,<br><br>        Defendant. | No.  1:00-cr-05339-JLT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. 36) |

Roy Allen Green moves the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 36.) Green, along with the supplemental filing by his court-appointed attorney (Doc. 52), argues that extraordinary and compelling reasons exist for relief, due to his age and medical conditions, and substantial changes to sentencing law in the last few years. Specifically, Defendant argues that the "stacked" sentence he received for two violations of 18 U.S.C. § 924(c)(1) is far higher than the sentence he would receive for the same conduct today. The government opposes this motion. For the reasons explained below, Green's motion is **DENIED**.

## BACKGROUND

On September 19, 2000, Green pled guilty to Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); two counts of Possession of

Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Four); and two counts of Possession of a Firearm During a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1) (Counts Three and Five). (*See* Docs. 10, 15.) Because Green had two prior state convictions for assault with a deadly weapon and robbery in violation of California Penal Code §§ 245 and 211, he qualified as a career offender. (Doc. 52 at 2.)[1] This resulted in an enhanced guideline level of 37, rather than the otherwise applicable level 30. (*Id*. at 5.) After subtracting three points for acceptance of responsibility, Green's adjusted offense level was 34 with a criminal history category VI. (*Id*.) For the non-firearm counts, Green agreed that his sentencing range was not less than 262–327 months. In addition, the § 924(c) counts carried mandatory five- and twenty-five-year sentences, respectively, to be served consecutively.

In Green's plea, he agreed that he should be sentenced at the high end of the guideline range for a total term of imprisonment "not less than 687 months." (Plea Agreement at 2, ¶ 2(f)). The benefits that Green received from this plea included a three-level reduction in his guideline level and a sentence in federal prison. This plea alleviated the risk that he would suffer convictions in state court for the same offenses, which would have made Green a "three-striker" and could have resulted in a life sentence in state prison. (*Id*. at 4, ¶ 2(l).)

On January 22, 2001, Judge Robert E. Coyle sentenced Green to 687 months imprisonment, comprised of 327 months on Counts One, Two, and Four to be served concurrently; 60 months as to Count Three, served consecutively to Counts One, Two, and Four; and 300 months on Count 5 to be served consecutively to Counts One through Four. (Docs. 14, 15.) While in custody, Green pled guilty following a prison assault and was sentenced in the Middle District of Pennsylvania to an additional 150 months to run consecutive to the sentence in the instant case. (Doc. 54 at 3, n. 2) (citing CR 01-387-MWB). Green is currently serving his aggregated 838-month sentence at the U.S. Bureau of Prisons' USP Terre Haute, a high security

---

[1] After the Supreme Court decision in *Johnson v. United States*, 576 U.S. 591 (2015), Green unsuccessfully sought § 2255 relief. (Doc. 28.) The Ninth Circuit affirmed the denial of relief on the basis that Green would still be a career offender regardless of *Johnson*'s impact on the mandatory Guidelines or the timeliness of Green's § 2255 motion. *United States v. Green*, 771 F. App'x 790, 791 (9th Cir. 2019).

penitentiary.  *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited April 11, 2022).  To date, Green has served approximately 21 years of his sentence and has an anticipated release date in 2060.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Under the First Step Act of 2018 ("the FSA") imprisoned defendants may bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

---

[2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13;[3] *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In the past, when moving for relief under 18 U.S.C. § 3582(c), courts recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Mathews*, No. 2:15-CR-00118-KJM, 2021 WL 3883735, at *3 (E.D. Cal. Aug. 31, 2021); *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

# ANALYSIS

To qualify for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), a court must consider three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

## A. Administrative Exhaustion

Green reports that he requested compassionate release from the Warden on March 4, 2021. (Doc. 36 at 21.) The Warden denied that request on March 12, 2021. (Doc. 54-1 at 9.) The government agrees that Green has exhausted his administrative remedies. (Doc. 54 at 3.) Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense, the government's concession on this point is dispositive. Therefore, the Court will address the merits of Green's motion.

## B. COVID-19 Risk

Green's motion and supplement briefly discuss his age and multiple health conditions. (Doc. 52 at 3–4.) "Extraordinary and compelling reasons" warranting compassionate release may include a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).[4] A defendant's medical condition may

---

[4] Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).

BOP records confirm that Green is being treated for hypertension, skin cancer, prostate cancer, antisocial personality disorder, cirrhosis, back problems, and prediabetes.  (*See* Doc. 58.) Records also indicate that Green's BMI is 31.5, placing him in the "obese" category.  Green does not argue for release on the basis of these conditions alone, but because they subject him to higher risks if he contracts COVID-19.  (Doc. 52 at 3–4.)

The government agrees that some of these conditions, including hypertension, mood disorders, cancer, liver disease, and obesity, can increase the chance of severe illness with COVID-19.  (Doc. 54 at 7) (citing *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 11, 2022).)  However, Green has received three doses of the Pfizer vaccine.  (Doc. 58 at 52.)

6

While the COVID-19 vaccines may not provide absolute protection against all infections, the evidence so far shows that they do provide significant protection against severe illness and death resulting from the coronavirus. *See, e.g.*, *United States v. Meyers*, No. 12-CR-00248-PJH-3, 2022 WL 602518, at *3 (N.D. Cal. Mar. 1, 2022); *United States v. Meza-Orozco*, 2021 WL 3630519 (W.D. Wash. Aug. 17, 2021) ("The Court understands that the science is still evolving as to vaccine efficacy. . . but it appears conclusively established that fully vaccinated individuals are reasonably protected from hospitalization and death."); *see also Science Brief: COVID-19 Vaccines and Vaccination*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html (last visited April 11, 2022). Further, records demonstrate that Green's conditions are being treated, which lessens his risk of COVID-19 complications. (*See* Doc. 58.)

**C.     Changes to Sentencing Law**

Green next argues that changes to sentencing law for violations of § 924(c) have created an extraordinary and compelling sentencing disparity that warrants relief. (Doc. 52 at 6.) Prior to the passage of the First Step Act in 2018, prosecutors could "stack" multiple counts of § 924(c) firearms violations, which resulted in defendants without previous weapons convictions being charged for both a first offense—carrying a five-year mandatory minimum—and a "second or subsequent offense"—carrying a mandatory twenty- or twenty-five-year sentence, to be served consecutively—in the same indictment. *United States v. Jones*, 482 F. Supp. 3d 969, 978 (N.D. Cal. 2020) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)). As such, someone convicted of two § 924(c) counts in a single offense automatically faced a minimum sentence of 25–30 years.

Section 403(a) of the First Step Act eliminated this practice by requiring the higher penalty only where a defendant is convicted of a § 924(c) violation after a previous § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, Title IV, § 403, 132 Stat. 5221–22 (2018). The First Step Act now only requires mandatory five-year consecutive sentences for each § 924(c) count in the same indictment. *Id*. Green argues that if he were sentenced under the amended scheme, he would receive at least twenty fewer years for his

firearm charges—a disparity that Green argues is extraordinary and compelling. But Congress did not make its amendment to § 924(c) sentencing retroactive. *See id*. § 403(b), 132 Stat. at 5222. The government argues that because Congress made § 403(a) exclusively forward-looking, its changes to the law cannot amount to an "extraordinary and compelling" reason for sentence modification under § 3582. (Doc. 54 at 11.)

There is a split of authority on this question. Some courts express concern that granting a motion for sentence reduction under § 3582(c)(1)(A) based on changes to § 924(c) would "supplant the retroactivity determination of courts . . . for the retroactivity determination of Congress." *United States v. Andrews*, 480 F.Supp.3d 669 (E.D. Pa. 2020); *accord*, *e.g.*, *United States v. Fulcher*, No. 98-0119, 2020 WL 4547970, *2 (S.D. Ind. Aug. 5, 2020) ("If Congress intended to authorize courts to exercise discretion to apply [the First Step Act] retroactively to otherwise ineligible defendants, it would have included that amendment . . . [The defendant] may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend.")

Other courts, including many in California and in this district, have rejected this reasoning on the grounds that § 403's lack of retroactivity "does not prohibit the court from considering this legislative change in deciding whether to reduce [a defendant's] sentence." *United States v. Parker*, No. 2:97-cr-202-TLN-EFP, 2021 WL 1966409 at *3 (E.D. Cal. May 17, 2021) (citing cases); *see also United States v. Smith*, 538 F.Supp.3d 990, 1000 (E.D. Cal. 2021). As the Fourth Circuit explained in *United States v. McCoy*, "there is a significant difference between automatic vacatur and resentencing of an entire class of sentences—with its 'avalanche of applications and inevitable resentencings'—and allowing for the provision of individual relief in the most grievous cases." 981 F.3d 271, 286–87 (4th Cir. 2020) (quoting *United States v. Haynes*, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020)). "[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id*. at 287 (emphasis in original). The Court is persuaded by this reasoning and joins those other district courts in finding that the enactment of the First Step Act and its elimination of "stacked" sentences for

1   multiple § 924(c) charges may constitute an extraordinary and compelling reason that warrants

2   the granting of compassionate release in some particular cases.

3         Indeed, the government's own briefing recognizes that courts "come to different

4   conclusions" about whether the § 924(c) sentencing regime change is extraordinary and

5   compelling enough for compassionate release "depending on the specific facts and circumstances

6   of each case." (Doc. 54 at 12.)  Crucial factors for this determination include, among other things,

7   the total sentencing disparity, the defendant's age at present and at the time of conviction,

8   evidence of rehabilitation, and the percentage of the original sentence that a defendant has already

9   served.  *See United States v. Defendant(s)*, 2020 WL 1864906, at *5 (C.D. Cal. Apr. 13, 2020);

10  *United States v. Smith*, 538 F. Supp. 3d 990 (E.D. Cal. 2021); *United States v. Maumau*, No.

11  2:08-CR-00758-TC-11, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020), *aff'd*, 993 F.3d 821

12  (10th Cir. 2021).

13        Though Green has already served a lengthy 22 years, this time accounts for less than half

14  of his 687-month sentence.  And because Green was only convicted of two § 924(c) violations,

15  the roughly 20-year sentencing disparity in this case is not as extreme as others considered

16  extraordinary in similar contexts.  *See id.* (60-year disparity was extraordinary and compelling);

17  *United States v. Lyle*, No. 4:02-CR-616-1, 2020 WL 7247780 (S.D. Tex. Dec. 9, 2020), *aff'd*, No.

18  21-20005, 2022 WL 126988 (5th Cir. Jan. 12, 2022) (finding a 40-year disparity extraordinary

19  and compelling); *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14,

20  2019) (same).  Further, by the Court's calculation, resentencing under the amended § 924(c)

21  guidelines would not result in Green's release for at least another fifteen years, minus any

22  applicable good time credits.[5]  *See United States v. Brown*, 411 F.Supp.3d 446, *order amended on*

23  *reconsideration*, 453 (S.D. Iowa 2020) (finding defendant's motion for relief "premature" where

24  resentencing would not result in release for a number of years).  After evaluating these facts, the

25  Court finds that Green has not met his burden of demonstrating "extraordinary and compelling"

26  circumstances that warrant relief in the form of release or sentence reduction at this time.

27  Accordingly, Green's

28  ---
[5] This calculation does not include the additional 150-month consecutive sentence that Green must still serve for his 2002 assault conviction.

1  motion for compassionate release (Doc. 36) is DENIED.

IT IS SO ORDERED.

   Dated:   **April 15, 2022**                                  _____
                                                                 UNITED STATES DISTRICT JUDGE